**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| The Church of Our Lord and Savior | ) | |
| Jesus Christ, | ) | |
| Plaintiff, | ) | **Case No: 15 C 4079** |
| | ) | |
| v. | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| City of Markham, Illinois, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the City's motion for summary judgment [128] is granted and the Church's motion for partial summary judgment [137] is denied. Civil case terminated.

## STATEMENT

The Church of Our Lord and Savior Jesus Christ ("Plaintiff" or "the Church"), a small religious congregation operating out of what used to be a private residence in the City of Markham, Illinois alleges in the instant suit that the City has violated the substantial-burden, unreasonable-limitations, and equal-terms provisions of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA"), and the Illinois Religious Freedom Restoration Act, 775 Ill. Comp. Stat. 35/15, and that it has applied its Zoning Code to Plaintiff in an arbitrary and capricious manner. Plaintiff seeks both injunctive relief and damages. Defendant contends that Plaintiff's claims are not ripe and that they fail on the merits in any event. Defendant moves for summary judgment on all claims while Plaintiff cross-moves for partial summary judgment.

**Facts**

The City of Markham (the "City") is an Illinois municipal corporation located entirely within Cook County, Illinois. (Pl.'s Resp. Def.'s. Stmt. Facts, Dkt. # 139, ¶ 1.) The Chruch is an Illinois not-for-profit corporation. (*Id.* ¶ 2.) The Church's pastor is Reginald McCracken, and Cheryl Lawrence is a Church trustee whose duties involve handling the Church's finances. (*Id.* ¶ 2.) The Church currently meets and holds worship services in a former single-family residence located at 16018 S. Spaulding Avenue, Markham, Illinois (hereinafter the "Property"). (*Id.* ¶ 4.). The Property is a parcel that is approximately 120 feet wide and 132 feet deep and is actually made up of three 40-foot-wide lots that were consolidated into one parcel. (*Id.*) The Property is in the City's R-3 One-Family Residential Zoning District. (*Id.* ¶ 6.)

Before the Property became a meeting location for the Church, it was the personal home of McCracken. (*Id.* ¶ 5.) The Property was acquired by McCracken in 1985, who lived there

until he moved out in 2012 because the Church needed more room at the Property. (*Id.*) According to McCracken, in 2003 while the Property was still his personal residence, it started becoming a meeting place for the Church; at that time the number of people that would gather at the Property fluctuated between 10 and 20. (*Id.* ¶ 8.) There are no facts to show that the City was aware in 2003 to 2004 that the Property had become a meeting place for the Church. (*Id.*) From 2003 until roughly 2006, when the Property was deeded to the Church, the Church was "constantly" looking for a different piece of property to accommodate an anticipated Church growth period. (*Id.* ¶ 14.) The Church also owns two other properties on the same side of Spaulding Avenue and just south of the Property. (*Id.* ¶ 12.) The plot bordering the Property to the immediate south at 16032 Spaulding Avenue is a single-family residence in which Cheryl Lawrence resides. (*Id.*) The second property owned by the Church is just south of 16032 Spaulding and is a single-family residence at 16036 Spaulding, where McCracken has lived since he moved out of the subject Property in 2012**.** (*Id.* ¶ 14.)

In June 2005, the Church, through Cheryl Lawrence, came to the City seeking approval of a plan to demolish the attached garage on the Property, which totaled approximately 730 square feet, in order to build in its place a new chapel structure proposed to be approximately 3,816 square feet. (*Id.* ¶ 15.) Alderwoman Geraldine Dudeck testified that prior to the City Plan Commission's considering the Church's proposal, she had received calls from two or three residents who lived near the Church complaining that their driveways were blocked by churchgoers' cars. (*Id.* ¶ 18.) At the July 13, 2005 meeting of the Plan Commission, members expressed concerns about the inadequacy of parking at the Property and the blocking of personal driveways. (*Id.* ¶ 17.) After a public hearing, the City's Plan Commission did not recommend approval of the plan, finding that "parking space [was] inadequate & footage requirements were not met for the City of Markham requirements." (Defs.' Ex. 20.) On October 5, 2005 the City Council concurred with the Plan Commission's recommendation and denied the Church's petition. (Pl.'s Resp. Defs.' Stmt. Facts, Dkt. # 139, ¶ 21.)[1]

Between 2006 and 2011, building permit applications were submitted from time to time for the Property for minor work such as roof repair on July 11, 2008 and bathroom rehabilitation on November 13, 2008. (*Id.* ¶ 25.) These applications listed Reginald McCracken as the Property owner. (*Id.*)

In and around July 2012, the Church began the conversion of the Property's garage into a chapel at a cost in excess of $40,000.00. (*Id.* ¶ 26, 28.) The parties dispute whether the Church obtained all the necessary permits for the renovation work, which included construction of the sanctuary, changing the windows on the Property, and installing pews, an air conditioning and heating system, a sound system, new flooring, and a roof. (*Id.* ¶ 27.) On or about July 30, 2012, the Church sought and obtained a permit from the City to put a new roof and gutters on the Property as well as to install drywall and insulation. (*Id.* ¶ 31.) On the permit application for the

---

[1] The Church contends that McCracken spoke with the City's Zoning Department, which told him that there was no zoning issue and he had only had to get approval for the construction from the Plan Commission. (Pl.'s Resp. Def.'s Stmt. Facts, Dkt. # 139, ¶ 15.)

new roof and gutters, the property type was designated as "residential" and "McCracken" was listed as the owner of the Property. (*Id.*) The permit application indicated that the estimated cost of labor and materials for the work was $12,000.00 and did not mention interior renovations to convert the garage and connector room into a sanctuary. (*Id.*) The Church acknowledges that it "may not have obtained a building permit for all the work the City now contends required a building permit" but notes that the City's Chief Building Inspector TyWayne Wilson testified before the Plan Commission on August 14, 2013 that the Church had "permits to do a large majority of the work." (*Id.* ¶ 32.) The new sanctuary measures approximately 1,180 square feet. (*Id.* ¶ 30.) Also around July 2012, the Church installed two crosses on the front of the Property. (*Id.* ¶ 33.)

On November 16, 2012, the City filed a complaint for injunctive relief against the Church in the Circuit Court of Cook County based on the Church's alleged failure to obtain a conditional use permit to operate a church in a residential zoning district, and because of safety concerns at the Property and in the neighborhood. (*Id.* ¶ 34.) The case remains pending but has been placed on hold by the state-court judge given the pendency of this federal-court action. (*Id.*)

On March 12, 2013, before the state matter was stayed, the state court ordered safety inspections of the Property, which uncovered several issues of concern. (*Id.* ¶ 35.) The state court sua sponte entered a temporary order restricting where the Church members could park and temporarily ordered the Church members not to park on the streets. (*Id.* ¶ 36.) As a result of the City's enforcement actions, the Church made several safety improvements. (*Id.*) The state court denied the Church's motion to dismiss the City's complaint. (*Id.* ¶ 38.) Subsequently, the Church sought to continue the state-court case to give it time to apply for a conditional use permit with the City. (*Id.*) The state court granted the request, but imposed interim parking restrictions on Church attendees. (*Id.*) In April 2013, the Church submitted to the City a Plan Commission Application for a conditional use. (*Id.* ¶ 39.) The application did not contain a request for a variance from the parking requirements of the City's Zoning Code or ask to be excused from some or all of the Zoning Code parking requirements due to hardship. (*Id.*)

The Church's 2013 Plan Commission Application for a conditional use first went before the City Planning and Zoning Commission (hereinafter "Plan Commission") on May 8, 2013, at which time the Plan Commission members expressed their concern to the Church representatives in attendance that parking at the Property was insufficient. (*Id.* ¶ 40.) At the conclusion of the May 8, 2013 meeting, the Plan Commission voted to not recommend the Church's Plan Commission Application for a conditional use. (*Id.* ¶ 42.)

Thereafter, the Church's conditional use application went before the City Council in June 2013, which remanded the matter back to the Plan Commission for more factfinding. (*Id.* ¶ 43.) Specifically, the City Council wanted reports generated from City staff and the City's consulting engineers. (*Id.*) Staff from the City's building and fire departments as well as engineers from the City's engineering consulting firm investigated the Property and prepared reports concerning the Property. (*Id.* ¶ 44.) Among other items that were noted in the reports, the City's fire

department approved an occupancy of 45 persons for the Property, but noted that some safety issues still needed to be addressed, including the installation of an emergency exit sign over the kitchen door. (*Id.* ¶ 45.) In its report of July 23, 2013, the City's civil engineer consultant noted that off-street parking and loading requirements for the Property were not met, and that certain ADA requirements for the Property were not satisfied because of the lack of handicapped-accessible parking and the steepness of handicapped-accessible ramp. (*Id.* ¶ 46.)

In its inspection report of August 4, 2013, the City housing department noted several items that still needed to be completed, and under the "Other Comments" section, the housing department calculated available parking for the Property, which the City contends was done in a manner that was inconsistent with the Zoning Code. (*Id.* ¶ 47.) The Church challenges the statement that the Building Department calculated available parking for the Property in a manner that was inconsistent with the Zoning Code because it was not seeking to "erect" or "enlarge" "any main building or structure." (*Id.*)

The reports having been received from the City's building and fire departments and from the City's civil engineering consulting firm, the Church's conditional use application went back before the Plan Commission on August 14, 2013, at which time the Plan Commission considered the written reports and held a continued hearing. (*Id.* ¶ 48.) The Church states that it was not furnished with a copy of the report from the engineering consulting firm until after the final City Council meeting on August 21, 2013, when a City attorney read it into the record. (*Id.*)

At the August 14, 2013 hearing, parking issues were again raised by the Plan Commission, which specifically expressed concern about the insufficiency of parking at the Property. (*Id.* ¶ 49.) Plan Commission member Geraldine Dudeck questioned City staff about how the parking requirement had been calculated. (*Id.*) On August 14, 2013, the Plan Commission made a recommendation to the City Council against a conditional use being granted for the Property. (*Id.* ¶ 50.) On August 21, 2013, the City Council took up the matter at a regular meeting and concurred with the Plan Commission, denying the Church's application for a conditional use. (*Id.* ¶ 51.) As a result of the City Council's decision on August 21, 2013, in September 2013 the Church filed suit against the City in case number 2013 M6 3479 in the Circuit Court of Cook County. (*Id.* ¶ 52.) The case was removed to this Court when the Church's complaint was amended to add several federal claims, including claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (*Id.*)

On August 4, 2016, the Court, without opining on whether the Church needed a variance, directed the Church to submit a variance to the City Council. (*Id.* ¶ 53.) On November 18, 2016, the Church submitted to the City a variance application entitled "Application for Variances." (*Id.* ¶ 44.) Included as part of the Application for Variances was a memorandum in support, photographs, and drawings on plats, showing the Church's proposed parking at the Property and at the two neighboring properties of 16032 and 16036 Spaulding Avenue. (*Id.*) As required by law, on February 8 and February 23, 2017, the City's Plan Commission held public hearings on the Church's Application for Variances, where a fact record was developed and issues of law were heard. (*Id.* ¶ 56.) Following the hearing on February 23, 2017, the Plan Commission

unanimously issued a Recommendation and Report recommending that certain variances sought by the Church be granted and certain variances be denied. (*Id.*) The Plan Commission's reasoning was set out in the Recommendation and Report. (*Id.*)

The Plan Commission's Recommendation and Report was transmitted to the City Council, which held a meeting on March 1, 2017. At that meeting, the City Council determined that it was correct and appropriate to concur with the Recommendation and Report of the Plan Commission and grant in part and deny in part variances sought by the Church for the reasons set forth in the Recommendation and Report. (*Id.* ¶ 57.) The City unanimously passed Ordinance No. 17-O-2168, "An Ordinance Granting in Part and Denying in Part Variances Requested for the Property Located at 16018, 16032 and 16035 Spaulding Avenue." (*Id.*) Noting that the City had previously considered conditional use requests from the Church not containing a request for parking variances and following passage of Ordinance No. 17-O-2168, the City passed Ordinance No. 17-O-2169, "An Ordinance Granting a Conditional Use Permit for the Property Located at 16018, 16032 and 16036 Spaulding." (*Id.* ¶ 58.) The latter ordinance grants the Church a conditional use permit on the conditions set forth in the Ordinance. (*Id.*) The Church appears satisfied with the results of these variances as it does not seek any further relief subsequent to the passing of the relevant ordinances.

According to the City's Zoning District Map, adopted March 29, 2012, there are at least six other churches located in the R-3 zoning district. (*Id.* ¶ 61.) The City's Plan Commission and its Zoning Board of Appeals were combined by ordinances in 2009. (*Id.* ¶ 62.)

**Analysis**

Ripeness of RLUIPA claims

Defendants first assert that the RLUIPA claims are not ripe. The ripeness doctrine is premised "on the Constitution's case-or-controversy requirements as well as discretionary prudential considerations." *Wis. Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011). In other words, ripeness "is predicated on the central perception . . . that courts should not render decisions absent a genuine need to resolve a real dispute." *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008). According to Defendants, the case was not ripe when filed because Plaintiff had not sought a variance with respect to the number of parking spaces the City says Plaintiff must have.[2]

---

[2] (Def's. Mem. Supp. Mot. Summ. J., Dkt. # 83, at 6 ("[Plaintiff] has acknowledged that it has room at the rear of the Property for a parking lot of more than ten parking stalls, and requiring a variance application to be submitted and reviewed before requesting relief from this Court would compel [Plaintiff] to show hardship and to consider how it could realistically fulfill as much of the Zoning Code parking requirement as possible, while providing the City the opportunity to consider, in an open forum and after presentation of evidence, a proposed parking plan that at least contains some thought and effort, rather than debating the matter in federal pleadings.").

The contentious history of the parties' relationship as well as their inability to home in on the relevant issues has significantly lengthened the Court's consideration of this case. Earlier in this litigation in its initial motion for summary judgment, the City asserted that "[i]f [the Church] is reasonable, the variance process might well result in the Church obtaining variance relief that it can live with." (Def.'s Mem. Supp. Mot. Summ. J., Dkt. # 83, at 6.) Subsequent to this assertion, as noted above, the Court directed the Church to file an application for a variance with the City, which it did and the City granted it. Plaintiff argues that Defendants waived their ripeness claim by failing to raise it earlier and that it did not need to obtain a variance because the City has admitted that the Church is a permitted use. Plaintiff also contends that the case was ripe at the time the City denied the conditional use permit in 2013.

In support of its assertion that the City admitted the Church is a permitted use, the Church refers to the Church's second request for admission to the City, which stated, "Churches are treated as a permitted use in Markham's R-2 and R-3 use districts," to which the City responded, "The City admits Request for Admission number 2." (Def.'s Resp. Req. Admis., Dkt. # 72-1, ¶ 2.) Under Rule 36(b), "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36. The City contends, however, that it admitted this request because "it is true – churches in the City are treated as permitted uses in the R-2 and R-3 zoning districts *if they receive conditional use approval*." (Def.'s Mem. Supp. Summ. J., Dkt. # 83, at 14) (emphasis in original). Indeed, the parties agree that "[a]ccording to the City's Zoning District Map, adopted March 29, 2012, there are at least 6 other churches located in the R-3 zoning district." (Pl.'s. Resp. Def.'s Stmt. Facts, Dkt. # 91, ¶ 61.) While the City's express response does not include the qualification "if they receive conditional use approval," Plaintiff's express request to admit does not define "permitted use."

Further, the Illinois Supreme Court has stated that "a 'special use' is a type of property use that is expressly *permitted* within a zoning district by the controlling zoning ordinance so long as the use meets certain criteria or conditions." *City of Chi. Heights v. Living Word Outreach Full Gospel Church & Ministries*, *Inc*., 749 N.E.2d 916, 926 (Ill. 2001) (emphasis added); *see id.* at 927 ( "A special exception use is a 'permitted use' when allowed under a special permit.") (internal quotation marks and citation omitted). As the Illinois Supreme Court indicated:

> A church may be an appropriate special use because, depending upon its size and location, it may create traffic or parking problems within the neighborhood in which it is located. For example, the number of parking spaces needed by a church may vary considerably depending upon the availability of parking spaces in the neighborhood at the time the church holds services. Thus, although a church might be considered a desirable and appropriate use within a zoning district, the municipality may classify it as a special use and may require, for example, that parking problems be resolved before granting a special use permit to a property owner that would allow the owner to use the property as a church.

*Living Word Outreach*, 749 N.E.2d at 926.

Therefore, the Court disagrees that the City's response to the Church's second request for admission conclusively establishes that churches are permitted uses, as that term is used in the City's Zoning Code (*i.e.*, as opposed to a special or conditional use). *See* Fed. R. Civ. P. 36(a)(1) (requests to admit may not be used to establish legal conclusions).

As to the substance of the ripeness issue, the dispute between the Church and the City appears to have had its genesis, at least in part, in the purported $40,000.00 interior renovation completed by the Church without obtaining proper building permits from the City.[3] Subsequent to the renovation, the City contends it became aware that the Property was in violation of the Zoning Code and sued the Church in state court in November 2012, seeking to enjoin its operation because it had not obtained a conditional use permit and to protect the safety of residents given that the property had not been inspected by the City. (Def.'s Ex. 15, Dkt. # 130-4, at Page 269 of 287.) It is not clear from the record what parking issues were discussed as part of the state-court case or the substance of those discussions.[4] After a hearing on the motion for injunctive relief, however, the state-court's order included a provision that "[t]he Defendant will only legally park in front yards and not on easements, grass or gravel except on any gravel driveways," and allowed the City to perform an inspection of the property. (Def.'s Ex. 16, Dkt. # 130-4, at Page 274 of 287.)

The Church then made certain safety improvements based on the inspection, and filed in April 2013 an application for conditional use "for the purpose of conducting religious worship services at the church property located at 16018 S. Spaulding, Markham, Illinois." (Def.'s Ex. 29, Dkt. # 130-5, at Page 32 of 77.) Without any substantive written explanation, the City denied the conditional use permit. According to affidavits submitted in support of the City's summary judgment motion, the "crux" of the City's problem with the application was the lack of sufficient off-street parking.[5] The parties have provided the audio of the relevant City Council meeting in which the Church's request was discussed, but much of what is said is unintelligible; thus, the Court is unable to make its own determination as to what subjects were discussed and the substance or extent of those discussions.

_____

[3] The Church, however, states in its variance application of November 18, 2016, that "the congregation renovated the interior of the building pursuant to permits approved by Markham." (Def.'s Ex. 36, Dkt. # 130-6, at Page 11 of 105.) It appears that the Church sought and obtained a building permit for roof and gutter installation, but did not seek or obtain a permit for the interior renovation that converted the garage and a connecting room into a sanctuary. (Pl.'s Resp. Def.'s Stmt. Facts, Dkt. # 139, ¶ 32.)

[4] The state-court case has been stayed pending resolution of the instant case.

[5] Despite having been denied the conditional use permit, the Church acknowledges that it has continued operating as a church without interruption.

As noted above, the City contends that the Church's claims were not ripe until it sought (and received) parking variances in 2016. According to the City, the Church needed both a conditional use permit to use the land as a church in a residential area and a variance to provide fewer than the 23 parking spaces required by the Zoning Code. (Def.'s Supp. Br., Dkt. # 105, at 6.) The City further states, without citation to the record, that "since both requests go before the Plan Commission it makes sense to seek both at the same time" and that such a "practice . . . is common in Illinois." (*Id.*)

The Church asserts that it did not need a variance because its representative stated at the August 2013 hearing that it was willing to comply with whatever restrictions the City required before approving the conditional use, including any parking restrictions. (Pl.'s Br., Dkt. # 150, at 2.)[6] According to the Church, the City Council possesses authority "to authorize the issuance of a special [or conditional] use permit and modify or abrogate the provisions of any conflicting ordinance of the city relating to the building or development of the special use property . . . " see Markham Zoning Code § 156.320, and should have acted pursuant to this provision in specifying the conditions with which the Church needed to comply. But the Church points to no evidence that it asked the City to proceed pursuant to this section. Nor has it offered any authority detailing when and how it is appropriate for the City to operate under this section of the Zoning Code. Finally, the Church fails to provide support for its contention that a verbal request was a sufficient basis upon which a variance could have been granted. The Church cannot now condemn the City for failing to do something the Church did not properly request.

Further, despite the Church's refrain that it simply wanted to resolve the issue, the facts show otherwise. Approximately six months after the case was filed, and the Court had granted the first motion to dismiss and provided leave to the Church to file a Third Amended Complaint, the parties appeared for a status hearing. At the hearing, counsel for the Church acknowledged that whether the Church was allowed to continue operating was the "big issue" and that once that was resolved, "then it should be incumbent upon the parties to say what actual damages do we have and whether or not that's worth the Court's time and both sides' time litigating this to a jury." (11/20/2107 Tr., Dkt. # 77, at 5.) Believing the parties were both open to resolving the case without further motion practice or trial, the Court directed the City to file a "a detailed description or explanation of what the plaintiff's request for parking plan approval would have to contain to be considered by the [City] council." (*Id.*)

The City filed the description of what the parking specification should look like. (Def.'s Parking Specifications for Subject Property, Dkt. # 67.) In response, the Church did not address

---

[6] According to the Church, at the August 2013 City Council meeting, its attorney asked the City Council "to approve the Church's [conditional use permit] application with whatever off-street parking restrictions the City Council saw fit to impose." (Pl.'s Br., Dkt. # 150, at 2.) The Church goes on to state that it simply "asked for 'an opportunity to at least know what is required of them and an opportunity to bring their facility into compliance, and that it what we are asking.'" (*Id.* (quoting Audio CD, 8/21/2013 City Council Meeting, Dkt. # 139-6, Pl.'s Ex. 57, at 18:45).)

the parking specifications, but instead challenged the City's motives, asked the Court to declare that it was a "permitted use" of the property based on a purported Rule 36 admission by the City, and, in the alternative, requested an order "directing the City to make reasonable accommodations from its off-street parking requirements so as to allow this impecunious and small congregation to continue its religious land use of its property. . . ." (Pl.'s Resp. Def.'s Parking Specifications, Dkt. # 70, at 1.)[7]  In other words, instead of formally seeking a variance from the City, the Church sought to bypass the administrative process and, in essence, asked for a court-ordered variance.

The Church took these positions despite the fact that at the end of the November 20, 2015 hearing at which the Court directed the City to file the parking specifications, the Court stated to the Church's counsel, "[the City's counsel] just told me in so many words . . . that if the parking plan is approved . . . the church will be allowed to stay," to which the Church's counsel responded, "That's great news." (11/20/2107 Tr., Dkt. # 77, at 16.)  Thus, despite being assured by the Court that the City had made a judicial admission regarding resolving the parking issue, the Church inexplicably failed to abide by the Court's order to review the parking specifications provided by the City and indicate how long it would need to draw up a proposed parking plan. Instead, the Church dug in its heels on issues that had arisen in the past and thwarted the Court's attempt for an "early" resolution of the case.  After an unfruitful discussion at the status hearing held soon after the Church filed its response, the Court noted that it could attempt to make some headway if the parties would "both stop trying to kill ghosts of the past," and further stated, "What I want to do is try to settle this case, but you people won't be pinned down as to what the issues are.  You keep changing roles on me.  You keep changing arguments." (12/7/15 Tr., Dkt. # 78, at 12.)

Ultimately, instead of presenting the City with a specific parking plan (either within the context of a court-supervised settlement or through the City's administrative process), the Church chose to pursue partial summary judgment. (*Id*. at 15.)  In the record in support of its summary judgment motion, the Church includes its 2016 variance application in which it acknowledges that because it "cannot afford to bring its existing parking into compliance with the strict letter of the City's ordinance, . . . *variances are required in order to allow the congregation to continue its religious assembly on the property*." (Def.'s Ex. 36, Dkt. # 130-6, at Page 11 of 105) (emphasis added).  Thus, contrary to its repeated protestations in this case that a variance is unnecessary, the Church has not only asked the Court to order a variance, it has also admitted in its (Court-ordered) variance application that a variance is required.

"Ripeness concerns may arise when a case involves uncertain or contingent events that may not occur as anticipated, or not occur at all." *Wis. Right to Life State Pol. Action Comm.* 664 F.3d at 148.  The ripeness doctrine is designed "'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over

---

[7]  Again, while the Church implies that it has been prevented from using the property for religious purposes, there is no record evidence that the Church was ever foreclosed from operating as a church.

9

administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). In order to determine whether the controversy is sufficiently immediate and real, courts examine: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Metro. Milwaukee Ass'n of Commerce v. Milwaukee Cty.*, 325 F.3d 879, 882 (7th Cir. 2003).

The Church has identified no hardship attributable to the withholding of court consideration. Indeed, the Court delayed its consideration of the merits of the Church's claims upon directing the Church to seek a variance in 2016, and the Church provides no evidence of hardship it endured as a result of this postponement.[8] *Congregation Anshei Roosevelt v. Planning & Zoning Bd.*, 338 F. App'x 214, 219 (3d Cir. 2009) ("[I]t is not apparent that the Congregation has suffered any constitutional injury simply because it must apply for a variance; indeed, it appears the Yeshiva is still operating at the synagogue."). Further, a determination on the variance issue resolved the Church's RLUIPA claim; the Church admits that the "2017 permit . . . stopped the accrual of damages . . . ." (Pl.'s Combined Mem. Law Resp. Def.'s Mot. Summ. J. & Supp. Mot. Partial Summ. J., Dkt. # 138, at Page 12 of 30.) As to the fitness of the issues for judicial decision, allowing the local administrative process to run its course has significant advantages. *See Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010) ("In the land-use context, the demands of 'a concrete factual context' and 'a dispute that is likely to come to pass' converge in an insistence on 'finality,' an insistence that the relevant administrative agency resolve the appropriate application of the zoning ordinance to the property in dispute."); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005) ("Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution."). Accordingly, the Court finds that the Church's RLUIPA claims were not ripe at the time they were filed.

The City further contends that while its subsequent issuance of the variances may have resolved the ripeness issue, the Church's RLUIPA claims are now moot because the Church has engaged in the appropriate administrative process and is "content with where it stands"; thus, there is no present controversy (Def.'s Reply, Dkt. # 146, at 1.) The Church asserts that its claims are not moot because it "seeks monetary damages resulting from the manner in which the City imposed its Code to restrict and prohibit its religious assembly in 2013." (Pl.'s Combined Mem. Law Resp. Def.'s Mot. Summ. J. & Supp. Mot. Partial Summ. J., Dkt. # 138, at Page 12 of 30.) The Church goes on to state that the 2017 issuance of a permit based on the variances "did not nullify the Church's claim to damages relating to the ways in which its ministry was impaired for the four years during which the City denied the Church zoning." (*Id.*) But these

---

[8] To the extent the Church contends that it suffered any purported financial setbacks or its members suffered emotional harm during that period, these injuries are of its own making given its failure to seek the variance earlier.

purported damages are speculative as there is no record evidence of such damages.  Moreover, the Court has concluded that the Church's RLUIPA claims were not ripe until the Church received the variances, so there is no legal basis under which the Church could obtain damages that allegedly started in 2013.

The Church also asserts that its request for declaratory judgments (presumably for the alleged RLUIPA violations) "are a predicate to the damages sought by the Church and would also lead to the recovery of fees." (*Id.*)  But if the Church cannot pursue damages because the claims were unripe, nor can it seek declaratory relief.  Thus, the Court finds that because there is no present case or controversy, the Church's RLUIPA claims are moot.[9]

<u>Violation of the Illinois Constitution</u>

With respect to the Church's claim that the City's actions were arbitrary and capricious in violation of the Illinois Constitution, the Church fails to respond to the City's argument on summary judgment; thus, the Church has waived this claim.  *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (stating that "silence leaves [the Court] to conclude" a concession and thus the "[f]ailure to respond to an argument . . . results in waiver").  Accordingly, summary judgment is granted in favor of the City on this claim.

**Conclusion**

For the reasons stated herein, the City's motion for summary judgment is granted and the Church's motion for partial summary judgment is denied.

**Date**: February 13, 2018

_____

**Ronald A. Guzmán**
**United States District Judge**

---

[9]  The Church's eleventh-hour attempt in its reply brief to add a claim for a violation of the Free Exercise clause of the First Amendment is improper and unavailing.